# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) |
| Plaintiff, | )  Case No.: |
| | ) |
| v. | )  **COMPLAINT** |
| | ) |
| TREBOR USA CORP., COLT TRUCK CARE, LLC, and WHOLESALE BUILDING PRODUCTS, LLC, | )  **JURY TRIAL** )  **DEMAND** ) |
| Defendants. | ) |
| | ) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful national origin and race-based employment practices and to provide appropriate relief to Charging Party Rafael Pintos, and a class of other aggrieved Hispanic and/or Black employees who were adversely impacted by such practices. As alleged with greater particularity below, Defendants Trebor USA Corp., Colt Truck Care, LLC, and Wholesale Building Products, LLC, violated and continues to violate Title VII of the Civil Rights Act of 1964 by: (1) subjecting Charging Party to a hostile work environment on the basis of national origin and by retaliating against him after he complained; and (2) by subjecting a class of Hispanic and Black employees to a hostile work environment based on their race and national origin.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Florida.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, Trebor USA Corp. ("Trebor"), a Florida corporation, has continuously been doing business in the State of Florida and the City of Hollywood, has continuously had at least 15. At all relevant times, Defendant Trebor has been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

5. At all relevant times, Defendant Colt Truck Care, LLC ("CTC"), a Florida corporation, has continuously been doing business in the State of Florida and the City of Hollywood, has continuously had at least 15 employees or would otherwise constitute a single employer with at least 15 employees by virtue of being an integrated enterprise with Defendants, Trebor and Wholesale Building Products, LLC. At all relevant times, Defendant CTC has

been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6. At all relevant times, Wholesale Building Products, LLC ("WBP"), a Florida corporation, has continuously been doing business in the State of Florida and the City of Hollywood, has continuously had at least 15 employees.  At all relevant times, Defendant WBP has been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7. At all relevant times, Defendants Trebor, CTC, and WBP operated as an integrated enterprise whose business functions were so functionally interrelated that they constituted a single employer.

8. Together, Defendants operate and maintain a fleet of trucks that deliver building materials, doors, and windows from Defendants' warehouses to their customers.  Trebor is a manufacturer and distributor of doors, windows, millwork, hardware, and accessories. WBP is a wholesaler and distributor of building materials and wood products. CTC is an in-house diesel mechanic and forklift repair company. Nearly all the trucks CTC services belong to Defendants' entities.

9. Defendants Trebor, CTC, and WBP share a common majority owner, Jocelyn Vinet.

10. Defendants Trebor, CTC, and WBP share a common vice president, Emilie Vinet.  Ms. Vinet is also a minority owner of Trebor and a manager of both Trebor and WBP.

11. Defendants Trebor, CTC, and WBP share a common chief financial officer, Rodney Robinson.

12. Defendants Trebor, CTC, and WBP also share a common Human Resources manager, Carolina Tamboles.

13. Defendants Trebor, CTC, and WBP also share the same registered agent, principal place of business and mailing address, and operate out of the same corporate headquarters in Hollywood, Florida.

## ADMINISTRATIVE PROCEDURES

14. More than thirty days prior to the institution of this lawsuit, Rafael Pintos filed charges with the Commission alleging violations of Title VII by Defendants Trebor, WPB, and CTC.

15. On June 14, 2024, the Commission issued to Defendants Trebor, WPB, and CTC Letters of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

16. On July 19, 2024, the Commission issued to Defendants Trebor, WPB, and CTC Notices of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

17. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### Rafael Pintos

18. Mr. Pintos is a Hispanic male of Puerto Rican, Dominican, and Afro-Caribbean descent. He identifies as biracial.

19. Mr. Pintos was hired as a mechanic/mechanic helper by CTC and/or Trebor around November or December of 2022.

20. Mr. Pintos was previously trained as a mechanic in the United States Army. He worked as a diesel mechanic for four years prior to starting his employment with CTC and/or Trebor.

21. Mr. Pintos was interviewed for the position by CTC and/or Trebor employee Adam "Doug" Blouin, who worked as the shop foreman.

22. During the interview, Mr. Pintos said to Mr. Blouin that he had only basic mechanic tools and, also, described his prior work experience in the Army.

23. The job description for mechanic/mechanic helper Mr. Pintos signed at the time of hire required only six months of experience and two years of technical education or equivalent experience.

24. Within two weeks of being hired, Mr. Pintos began hearing Mr. Blouin, his supervisor, use racial and ethnic slurs against Hispanic and Black employees, including himself.

25. Mr. Blouin frequently called Mr. Pintos a "spic," a "lazy spic," and said that he did "spic work," among many other racial and ethnic slurs.

26. Mr. Blouin also told Mr. Pintos that he did "n*gger work" (hereinafter "n*****" or "N-word").

27. Mr. Blouin also called Mr. Pintos a "lazy n*****."

28. When he was cleaning up from work, Mr. Blouin told Charging party, "You're taking a Puerto Rican shower!"

29. CTC manager and co-owner Seth Denny overheard the comment and laughed with Mr. Blouin about it.

30. In addition, Mr. Blouin called Mr. Pintos other derogatory names that he did not call white employees, such as "bitch", "pussy," "shitty mechanic," and "not a real man."

31. Mr. Blouin also forced Mr. Pintos to do more dangerous and more menial work than white employees, such as removing tires with open flames and aerosols, and, also, cleaning up messes.

32. Mr. Blouin would also scream at Mr. Pintos and threatened to fire him and would unfairly criticize his work.

33. On February 3, 2023, Mr. Pintos complained to Mr. Denny about Mr. Blouin's behavior.

34. Mr. Denny said that he would take care of it but the harassment did not stop.

35. On February 7, 2023, Mr. Pintos complained to the Human Resources officer of WBP, Carolina Tamboles, about Mr. Blouin.

36. During this meeting, Ms. Tamboles called in Mr. Denny, and they both said that Mr. Blouin had a prior history of engaging in this kind of conduct toward other employees.

37. In fact, Mr. Blouin had received a prior disciplinary notice for making "racist comments" and using derogatory names.

38. As a result of Mr. Pintos's complaints, Ms. Tamboles conducted a one-day investigation.

39. Ms. Tamboles only interviewed Mr. Pintos and Mr. Blouin.

40. Ms. Tamboles disclosed to Mr. Blouin that Mr. Pintos had made harassment allegations against him.

41. Following the investigation, Ms. Tamboles issued Mr. Blouin a verbal warning.

42. Mr. Blouin did not receive any additional anti-discrimination training or written discipline.

43. Mr. Blouin received no change in pay or official change in job title as a result of the investigation.

44. Mr. Pintos was forced to continue working with Mr. Blouin.

45. Following the investigation, Mr. Blouin would scream and threaten Mr. Pintos, saying he was a "dead man" and would regret reporting him.

46. Mr. Blouin's continued to call Mr. Pintos "spic," and treated him less favorably than white employees.

47. Mr. Pintos reported this new harassing and retaliatory conduct to Ms. Tamboles and Mr. Denney.

48. However, no additional investigation or corrective action took place.

49. Approximately one week later, on February 18, 2023, Defendants' Vice President, Emilie Vinet, called Mr. Pintos and fired him.

50. Ms. Vinet told Mr. Pintos he was being fired because he lacked the requisite experience.

51. Defendant was aware of Mr. Pintos's experience at the time he was hired.

52. Prior to his termination, Mr. Pintos had never received any reprimand for his performance.

53. Mr. Vinet fired Mr. Pintos because of his complaints of discrimination.

54. After Mr. Pintos filed his charge with the Commission, Mr. Blouin found him on Facebook and sent him a message accusing him of being a "cry baby."

55. Because of Defendants' unlawful conduct, Mr. Pintos was harmed and suffered damages.

## **Class Allegations**

56. From at least July 28, 2022, to the present, Defendants subjected a class of Hispanic and/or Black employees at its Hollywood location to a hostile work environment based on their race and/or national origin.

57. Defendants' Hispanic and/or Black employees frequently heard Mr. Blouin use the racial/ethnic slurs "spic" and "n*****" on a near daily basis and witnessed Mr. Blouin mistreating Hispanic, Black, and Spanish-speaking co-workers.

58. For example, Mr. Blouin said that the Black groundskeeper employed by Defendants was "nothing but an old n*****."

59. Likewise, after Mr. Blouin had a confrontation with Defendants' warehouse employee named Josh, Mr. Blouin referred to Josh by the N-word, and said that Josh was there only because "the company needed a n*****."

60. Mr. Blouin called a Hispanic mechanic employed by Defendants a "fucking immigrant" and "spic" who "deserved low wages" and said, "all spics deserve low wages."

61. Mr. Blouin was not the only supervisor who used racist language in the workplace. Defendants' supervisor Tim Roush called Black employees "boys."

62. Defendants' President Vinet told Black employees that, "they were going to have to start using whips."

63. Management knew racist comments were being made but failed to stop it.

64. In addition, Black and Hispanic employees were forced to do more dangerous and laborious jobs than their white counterparts.

65. Black employees' work was also unfairly scrutinized, and they were forced to do more work than their white counterparts.

66. Because of Defendants' unlawful conduct, a class of Black and/or Hispanic employees were harmed and suffered damages.

## STATEMENT OF CLAIMS

### Count I: Hostile Work Environment (Rafael Pintos)

67. As set forth in paragraphs 18 through 55, which are fully incorporated herein, Defendants engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Mr. Pintos to a hostile work environment on the

basis of his national origin, Hispanic, of Puerto Rican, Dominican, and Afro-Caribbean descent.

68. The effect of the practices complained of in paragraphs 18 through 55 have been to affect the terms and conditions of Mr. Pintos's employment, to deprive him of equal employment opportunities, and to otherwise adversely affect his status as an employee because of his national origin.

69. The unlawful employment practices complained of in paragraphs 18 through 55 were done intentionally with malice or with reckless indifference to the federally protected rights of Mr. Pintos, based on his national origin.

70. Mr. Pintos suffered damages as a result of the conduct described herein.

## Count II: Hostile Work Environment (Class Members)

71. As set forth in paragraphs 56 through 66, which are fully incorporated herein, Defendants engaged in unlawful employment practices in violation of 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by subjecting a class of employees at Defendants' Hollywood locations to a hostile work environment based on race, Black and/or national origin, Hispanic.

72. The effect of the practices complained of in paragraphs 56 through 66 has been to deprive the aggrieved class members of equal employment opportunities because of their race (Black) and/or national origin (Hispanic).

73. The unlawful employment practices complained of in paragraphs 56 through 66 were done intentionally and with malice and/or with reckless indifference to the federally protected rights of the class of aggrieved employees, based on their race (Black) and/or national origin (Hispanic).

74. The aggrieved class members suffered damages as a result of the conduct described herein.

### Count III: Retaliation (Rafael Pintos)

75. As set forth in paragraphs 33 through 55, which are fully incorporated herein, Defendants retaliated against Mr. Pintos as a result of his complaints and opposition to national origin-based harassment by disclosing his identity as the complainant to his harasser, by subjecting him to a retaliatory hostile work environment, and by ultimately terminating his employment, in violation of Section 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a)(1).

76. The effect of the practices complained of in paragraphs 33 through 55 have been to affect the terms and conditions of employment for Mr. Pintos, to deprive him of equal employment opportunities, and to otherwise adversely affect his status as an employee because he engaged in protected activity.

77. The unlawful employment practices complained of in paragraphs 33 through 55 were done intentionally and with malice and/or with reckless indifference to the federally protected rights of Mr. Pintos.

78. Mr. Pintos suffered damages as a result of the conduct described herein.

### PRAYER FOR RELIEF

WHEREFORE, EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, its officers, agents, servants, managers, employees, and all persons in active concert or participation with it, from participating in discriminatory conduct based on race, and national origin, including, but not limited to, permitting a hostile work environment and/or retaliating against employees who engage in statutorily protected activity in the workplace;

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for prospective Black and/or Hispanic employees and which eradicate the effects of its past and present unlawful employment practices;

C. Order Defendants to make Mr. Pintos whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices including but not limited to reinstatement and/or front pay;

D. Order Defendants to make Mr. Pintos, and the class of aggrieved Black and/or Hispanic employees, whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

E. Order Defendants to pay Mr. Pintos and the class of aggrieved Black and/or Hispanic employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

F. Grant such further relief as the Court deems necessary and proper in the public interest; and

G. Award EEOC its costs of this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Date: September 30, 2024

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

KARLA GILBRIDE
General Counsel
CHRISTOPHER LAGE
Deputy General Counsel
GWENDOLYN Y. REAMS
Associate General Counsel
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507

KRISTEN M. FOSLID
Regional Attorney
Florida Bar No. 0688681

*/s/ Erica Selig*
Erica Selig
Lead Counsel
Florida Bar No. 0120581
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Miami District Office
100 S.E. 2nd Street
Suite 1500
Miami, Florida 33131
Phone: (786) 648-5898
Fax: (305) 808-1835
Erica.Selig@eeoc.gov